# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )       Case No.   '22 MJ04671
Black GPS Tracker )
2022250400147301-0006 )
("Target Device") )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days *(give exact ending date if more than 30 days:* ___ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Matthew Hogan*
Applicant's Signature

Matthew Hogan, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: December 28, 2022

*/s/ Barbara L. Major*
Judge's signature

City and state: San Diego, California    Hon. Barbara L. Major, United States Magistrate Judge
*Printed name and title*

## **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following property is to be searched:

>Black GPS Tracker
>Seizure No. 2022250400147301-0006
>("Target Device")

The Target Device is currently in the possession of Homeland Security Investigations, located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in **Attachment A** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Device** for evidence described below, between the dates of January 9, 2022 up to November 9, 2022. The seizure and search of the **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be location data and identifying information of individuals accessing the device, including telephone numbers and identifying information for phones and/or computers remotely accessing the device:

a. tending to indicate efforts to import methamphetamine, or some other controlled substances, from Mexico into the United States;

b. tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances, from Mexico into the United States;

c. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances, from Mexico into the United States; and/or

d. tending to identify the user of, or persons with control over or access to, the **Target Device**;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

# AFFIDAVIT IN SUPPORT OF
# APPLICATION FOR SEARCH WARRANT

I, Special Agent Matthew Hogan, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

Black GPS Tracker

Seizure No. 2022250400147301-0006

("**Target Device**")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963, as further described in Attachment B, from January 9, 2022, to November 9, 2022. The requested warrant relates to the investigation and prosecution of Gabrielle Lynn COOKE ("Defendant") for importation of methamphetamine. The **Target Device** was found concealed in the dash of a 2011 Chevrolet Traverse driven by Defendant on July 3, 2022 from Mexico into the United States; the Traverse was then found to contain approximately 45.40 kilograms (100.09 pounds) of methamphetamine concealed in the rear quarter panels and engine compartment firewall. The **Target Device** is currently in the custody of Homeland Security Investigations and located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

# BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since February of 2020. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers and traffickers will use GPS devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

   b. Drug smugglers and traffickers and their coconspirators will use GPS devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

   c. Drug smugglers and traffickers will use GPS devices to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

6. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data on GSM cellular devices. Depending on the device, such data can include user identity, location, phone numbers, network authorization data,

personal security keys, and IP addresses. Much of the evidence generated by a smuggler's use of a GPS tracker would likely be stored on any SIM Card that has been utilized in connection with that device.

7. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that GPS devices can and often do contain electronic records, including location data and telephone numbers or identifying information for individuals accessing GPS Devices directly or remotely through phones and/or computers. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the GPS device. Specifically, I know based upon my training, education, and experience investigating drug smuggling and trafficking conspiracies that searches of GPS devices sometimes yields evidence:

   a. tending to indicate efforts to import controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

   b. tending to identify coconspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

   c. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points; and/or

   d. tending to identify the user of, or persons with control over or access to, the GPS device.

8. Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug

conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months. This planning sometimes includes the use of GPS devices.

**FACTS SUPPORTING PROBABLE CAUSE**

9. On July 3, 2022, at approximately 8:00 AM, Defendant, a United States citizen, applied for entry into the United States from Mexico through the San Ysidro, California Port of Entry in vehicle lane #22. Defendant was the driver, sole occupant, and registered owner of a 2011 Chevrolet Traverse bearing California license plates.

10. During pre-primary inspection, a Customs and Border Protection Officer ("CBPO") greeted Defendant and asked where she was going. Defendant stated she was going back home to Los Angeles after visiting her ex-mother-in-law in Tijuana. The CBPO asked Defendant how long she spent in Mexico and Defendant responded only a couple of days. When asked about the Traverse, Defendant stated it belonged to her. The CBPO then asked for her vehicle registration. As Defendant opened the glove box, the CBPO noticed it was empty. Defendant then handed the CBPO the vehicle registration and the CBPO noted the vehicle was recently registered in Defendant's name. The CBPO asked how long Defendant had owned the vehicle and she responded that she had owned it for a few weeks. Then the CBPO received two negative Customs declarations from Defendant and began inspecting the vehicle. As part of his inspection, the CBPO utilized his density meter and received high readings at the rear passenger quarter panel. The CBPO escorted Defendant to the vehicle secondary lot for further inspection and had her drive the Traverse through the Z-Portal.

11. A CBPO operating the Z-Portal X-Ray machine detected anomalies in the driver and passenger rear quarter panels and firewall of the vehicle.

12. At that point, Defendant was detained and placed in the Port of Entry's Security Office.

13. A Canine Enforcement Team in secondary inspection operations screened the vehicle. The Human and Narcotic Detection Dog alerted to the interior passenger side quarter panel of the vehicle.

14. Further inspection of the vehicle resulted in the discovery of 90 packages concealed in the rear quarter panels and firewall of the vehicle, with a total approximate weight of 45.40 kgs (100.09 lbs). A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine.

15. Defendant was placed under arrest at approximately 10:00 am for importation of a controlled substance, in violation of 18 U.S.C. § 952, 960.

16. After being advised of her *Miranda* rights, Defendant agreed to an interview. Defendant stated she had been hired by an individual identified as "Kenny" to spend weekends traveling and making deliveries in exchange for payments of $5000.00 for each delivery. Defendant stated Kenny contacted her through Snapchat and that she met Kenny in person at a Red Robin restaurant in San Bernardino, CA, in January or February 2022.

17. Defendant stated she had met with Kenny four or five times and primarily communicated with him through Snapchat. On one occasion, she met Kenny at a used car dealership to buy a vehicle, but she was initially unable to purchase a vehicle because she did not have the necessary credit. However, Kenny later informed her that he bought another vehicle under another person's name and would transfer the title and registration to Defendant's name.

18. Defendant stated Kenny purchased two white Chevrolet Traverses and registered one in her name and assigned the other to an individual named "Melody."

Defendant stated she did not go to the DMV but received the vehicle's registration in the mail at her address.

19. Defendant stated that Kenny would contact her regarding her availability for specific weekends. When Defendant was available, she would go to San Bernardino and turn over her personal car to a third individual, whose name she did not know. She would then take the Chevrolet Traverse to different locations in San Bernardino or a parking lot on the border for someone else to pick up. She stated she moved cars around San Bernardino County about eight times.

20. On the occasion leading to her arrest, Defendant drove one of the vehicles from San Bernardino to Tijuana on July 2, 2022. After crossing south, she checked into a motel and informed Kenny she had arrived. Kenny then called to instruct her to swap vehicles. Defendant then left to cross back into the United States with a red vehicle guiding her to the border. Defendant was supposed to drive the vehicle to San Bernardino where she would exchange it back for her personal car and be paid $5000.

21. Defendant also recounted an occasion on June 12, 2022, where she walked across the border to Tijuana and was picked up by an unidentified individual and brought to where her assigned vehicle was located. Defendant then drove the vehicle across the border to San Bernardino and dropped it off at an ARCO gas station.

22. Defendant stated she was not paid for that occasion but then admitted she was paid $4000 after being shown a text message on her phone from Kenny on June 12, 2022.

23. Defendant was asked if she believed her services were worth the amount of money she was being paid, to which Defendant stated she believed the work to be suspicious. However, Defendant stated she asked Kenny if she was going to deliver drugs and Kenny responded that it was not drugs but money. Defendant denied knowing the

vehicle would have anything illegal but admitted thinking it could be drugs.

24. When asked why she made up the story to the pre-primary CBPO, Defendant stated Kenny told her to make up a story because otherwise she would be "red flagged" coming through the Port of Entry. Defendant then continued to deny knowledge there were drugs in the vehicle.

25. On November 9, 2022, a vehicle viewing of Defendant's 2011 Chevrolet Traverse was conducted at Apple Towing, 9020 Airway Rd. San Diego CA 92154. During the viewing, an expert mechanic hired by the United States discovered the **Target Device** in dashboard under the steering wheel of the vehicle. At that time, it appeared that the **Target Device** was still powered on with flashing LED lights. Additionally, the **Target Device** contained a SIM card.

26. Based on my training and experience, as well as in consultation with other law enforcement officers experienced in narcotics trafficking investigations, I believe the SIM card may contain saved data regarding a GPS tracker's location history and identifying information for the individuals who installed, accesses, and/or monitored the device. In this case, I believe the **Target Device** may contain such information regarding the Chevrolet Traverse's location history and Defendant's and/or her coconspirators' involvement in the drug smuggling scheme even after Defendant's arrest and the vehicle seizure.

27. The **Target Device** was then seized by HSI.

28. Based on my experience and training, and in consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I also believe the **Target Device** was used to coordinate with coconspirators regarding the importation and delivery of the controlled substances, and to otherwise further the conspiracy both inside and outside the United

States. There is also probable cause to believe that electronic records, including location data and telephone numbers or identifying information for individuals accessing the **Target Device** directly or remotely through phones and/or computers are stored in the memory of the **Target Device**, which may identify other persons involved in drug-trafficking activities.

29. I know that drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, coconspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Based on my training and experience, individuals such as Defendant will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks, and months longer than they claimed to be involved. Given those facts, I respectfully request permission to search the **Target Device** for items listed in Attachment B beginning on January 9, 2022, up to and including the entire day of November 9, 2022.

## METHODOLOGY

30. It is not possible to determine, merely by knowing a GPS device's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. GPS devices today can have functions such as full address books and can be mini computers. An increasing number of GPS devices now allow users to access them remotely with computers or with a cellular phone and remotely erase all of the data contained on the device. For that reason, the device may only be powered in a secure environment. Many GPS devices do not have hard

drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device.  Current technology provides some solutions for acquiring some of the data stored in some GPS device models using forensic hardware and software.  This process is time and labor intensive and may take weeks or longer.

31.   Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis.  All forensic analysis of the data contained within the **Target Device** and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

32.   Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months.  The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

33.   Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//
//
//
//
//
//
//
//

## CONCLUSION

34. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Device** will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960, and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Matthew Hogan*
Special Agent Matthew Hogan
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 28rd day of December 2022.

*Barbara L Major*
Honorable Barbara L. Major
United States Magistrate Judge